```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
JOSEPH LITTLE,
                                    :
              Plaintiff,
                                    :
          - against -
                                    :
THE CITY OF NEW YORK, Police
Officer DOUGLAS STRONG, Shield No. :
22185, 2 unknown Detectives, 1
unknown Sergeant, 2 unknown police :
officers, GUSTAVO BLAIN, Shield
No. 01588, and other unknown        :
police officers with the New York
City Police Department,             :

              Defendants.    :

- - - - - - - - - - - - - - - - - -x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/15/07

**OPINION**

04 Civ. 7571 (DC)

**APPEARANCES:**      LAW OFFICE OF JOANNE M. DWYER
                      By:  Joanne Marie Dwyer, Esq.
                 225 Broadway, 41st Floor
                 New York, NY  10007
                 Attorney for Plaintiff

                 NEW YORK CITY LAW DEPARTMENT
                      By:  Susan P. Scharfstein, Esq.
                 100 Church Street
                 New York, NY  10007
                 Attorneys for Defendants

**CHIN, D.J.**

        Plaintiff Joseph Little brings this action under 42
U.S.C. § 1983 against the City of New York and police officers
Douglas Strong and Gustavo Blain.  He asserts, inter alia, claims
for false arrest and false imprisonment, malicious prosecution,
conspiracy, and violations of due process and equal protection
under the Fourteenth Amendment.  Strong and Blain now move for
summary judgment dismissing plaintiff's claims.  Plaintiff
opposes the motion, and moves for additional discovery under Rule

56(f).  For the following reasons, plaintiff's Rule 56(f)
application is denied, and defendants' motion for summary
judgment is granted.

**BACKGROUND**

**A.   Procedural History**

    **1.   The Complaint**

        On September 24, 2004, plaintiff filed this complaint
under 42 U.S.C. § 1983 against the City of New York, Officers
Douglas Strong and Gustavo Blain, and various other unnamed
police officers.

        Plaintiff has never moved to amend the complaint to
include the unnamed police officers, and thus, they are no longer
part of this action as the applicable statute of limitations
appears to have expired.  Moreover, on February 23, 2007, the
parties entered into a stipulation and order dismissing all
claims against the City of New York.  (<u>See</u> Stipulation and Order,
February 23, 2007).  Accordingly, the only remaining defendants
in the case are Officers Strong and Blain.

    **2.   Discovery**

        On August 19, 2005, at a pretrial conference, I set
January 20, 2006 as the date for the completion of all discovery.
By letter dated January 19, 2006, plaintiff requested a 90-day
extension for discovery.  Plaintiff's counsel stated that the
extension was needed because she had discovered the identity of
some of the unknown parties, and wished to discuss with

-2-

defendants' counsel the possibility of amending the complaint to add the parties.  She also cited certain family obligations for the delay in discovery.  I extended the discovery cut-off to April 21, 2006.

By letter dated April 18, 2006, plaintiff's counsel once again wrote to the Court asking to adjourn the conference set for April 21st so that plaintiff could amend the complaint to include certain unnamed officers.  The letter also included a request to extend discovery for another 90 days.  I did not adjourn the conference, and asked the parties to appear for the conference set for April 21, 2006.  At that conference, the parties informed me that documents had been exchanged, but that no depositions had taken place.  I once again extended the discovery cut-off to June 30, 2006.

By letter dated June 23, 2006, plaintiff's counsel wrote the Court requesting another 90-day extension for discovery.  Plaintiff's counsel provided the following reasons: (1) the underlying events took place in 2001, and thus the parties were having difficulty retrieving files for plaintiff's case; (2) the parties anticipated that they would need to conduct ten to twelve depositions, which would require more time; and (3) in response to a subpoena from plaintiff for certain discovery documents, the Manhattan District Attorney's Office responded by asserting work product privilege as to the requests relating to Hashiem Henry, but it consented to producing certain files relating to plaintiff.  Although I did not grant the full 90-day

-3-

extension, I nevertheless extended the discovery cut-off to
August 11, 2006.

By letter dated July 25, 2006, plaintiff's counsel
again wrote the Court asking for yet another extension for
discovery.  Plaintiff's counsel argued that the District
Attorney's Office had not yet turned over all the documents she
had requested, especially the police officer affidavits used in
support of the line-ups that were conducted in which plaintiff
had participated.  In response, I denied plaintiff's request for
an extension of the discovery cut-off, but I provided that
plaintiff could move to compel the District Attorney's Office to
comply with the prior subpoena, and that this matter could be
resolved past the discovery cut-off.  The request for additional
discovery was renewed at the August 11, 2006 conference.  I again
denied the request.

At the conference, however, I asked defendants' counsel
to contact the District Attorney's Office about producing the
documents relating to <u>People v. Hashiem Henry</u>.  On October 12,
2006, the District Attorney's Office forwarded 662 pages of
documents to defense counsel (the Law Department), some of which
purportedly were subject to privilege.  Defendants produced about
180 pages relating to the three crimes for which plaintiff was
arrested and charged for -- and objected to the rest as
privileged.  The objections by the District Attorney's Office
were relayed to plaintiff, and plaintiff did not challenge its
position on the matter.  To date, there remain some audiovisual

-4-

materials that have not yet been produced, which plaintiff has requested in his Rule 56(f) application.

### 3. **The Instant Motions**

On November 28, 2006, plaintiff filed this motion for summary judgment.  Plaintiff opposed the motion, but did not submit a counter-statement to Defendants' Rule 56.1 Statement of Undisputed Facts.  Rather, plaintiff claims that additional information is required before he can proffer a counter-statement.  (Dwyer Affirmation ¶¶ 1, 3).  Accordingly, he has requested an extension of discovery under Rule 56(f), which I discuss below.

Plaintiff's attorney has submitted, however, an affirmation (the "Dwyer Affirmation"), which includes alleged facts that contradict defendants' version of the facts.  The Dwyer Affirmation is supported by the following exhibits, some of which I summarize below:

Exhibit A:  Excerpts from a transcript of Officer Strong's deposition, and a copy of a photograph of the plaintiff taken on the date of his arrest -- September 25, 2001.

Exhibit B:  Assistant District Attorney Amy Schwartz's affirmation and reply affirmation in support of a line-up order in the case of <u>People v. Hashiem Henry</u>.

Exhibit C:  Officer Denny Acosta's affidavit in support of a search warrant for 503 West 177th Street, Apt. #4C, dated November 13, 2001.

Exhibit D:  Affidavits from several witnesses to the September 25, 2001 robbery, including Rosa Peguero, Darlenes Candelario, Denny Candelario, Leonidas Dominguez, Reney Torres, Mercedes Batista, and Loures Ortiz; and an additional affidavit from Ricardo Garcia, a private investigator retained by plaintiff's counsel to conduct an investigation relating to this case.

Exhibit E:  A sworn handwritten statement from Adalgisa Rodriguez, the female victim of the September 25, 2001 robbery, which describes the robbery and states that she did not identify plaintiff as the perpetrator.  The statement is in Spanish, but a translation was subsequently provided to the Court.

Exhibit J:  A copy of the Sprint report related to the September 25, 2001 robbery.

Exhibit K:  Excerpts from a transcript of plaintiff Joseph Little's deposition.

Exhibit L:  Another handwritten statement by Adalgisa Rodriguez, the female victim of the September 25, 2001 robbery. The statement is dated September 25, 2001, and provides a very brief description stating that she was robbed by a tall, black man and that she did not know anything else.  The statement is written in Spanish, and translated version is attached.

Exhibit N:  A copy of the emergency services report generated from the September 25, 2001 robbery.

Exhibit O:  New York Police Complaint reports for crimes that occurred between August 17, 2001 to September 9, 2001.

Exhibit P:  Samples of photos of line-ups in which plaintiff participated.

I have, for purposes of this motion, treated the Dwyer Affirmation and its accompanying exhibits as plaintiff's Rule 56.1 counter-statement.  See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (district court has broad discretion to overlook a party's failure to comply with local rules, including Rule 56.1).  Thus, where there is a conflict in fact between defendants' Rule 56.1 Statement and the Dwyer Affirmation, I resolve the conflict in favor of plaintiff -- but only where plaintiff has provided admissible evidence to support his version of the facts.

## C.   **The Facts**

First, I provide a brief summary of the relevant facts as alleged in the complaint.  Second, I provide a more detailed version of the facts based on the evidence submitted by both parties.

### 1.   **Summary of the Complaint**

On September 25, 2001, at approximately 8:30 a.m., plaintiff Joseph Little was in his apartment at 511 West 177th Street, Apartment #5C, when three police officers knocked on his door.  (Compl. ¶¶ 17-18).  After plaintiff opened the door, the police officers threw him against the wall in the hallway, and

-7-

handcuffed him.  (<u>Id.</u> ¶ 20).  As a result of these actions, plaintiff suffered injuries to his arms, back, face, and torso. (<u>Id.</u> ¶ 21).

When plaintiff asked the officers what was happening, one of them responded by saying, "Shut the hell up you black bastard, we got you now."  (<u>Id.</u> ¶ 23).  As the plaintiff was being led towards the elevator, he saw a group of about six or seven officers with shields and helmets enter his apartment. (<u>Id.</u> ¶ 24).

After plaintiff was led outside his building, a Hispanic police officer told him that he had been chasing plaintiff from 178th Street.  (<u>Id.</u> ¶ 27).  He then said that plaintiff had run through an alley, jumped over a fence, ran up a fire-escape to the roof, and then went over the roof to the next building.  (<u>Id.</u>).  Plaintiff responded by saying that the officer was not chasing him, and that the officer had the wrong man. (<u>Id.</u>).

Plaintiff was searched and made to take off his boots, but no property belonging to the victim was found.  (<u>Id.</u> ¶ 29). Plaintiff was then arrested and brought to the 33rd Precinct. (<u>Id.</u> ¶ 30).

As plaintiff sat in a cell in the precinct, some of the detectives suggested that they could work out a deal.  (<u>Id.</u> ¶ 31).  The detectives mentioned that they had a lot of robberies on plaintiff, but plaintiff repeatedly told them that they had

-8-

the wrong man.  (<u>Id.</u> ¶¶ 32-33).  The detectives then told plaintiff that he was looking at "25 to life."  (<u>Id.</u> ¶ 34).

Plaintiff was subsequently charged with six other robberies, but none of the cases was ultimately presented to the grand jury.  (<u>Id.</u> ¶ 35).

On October 10, 2001 -- while still detained -- plaintiff was formally re-arrested by Officer Gustavo Blain, and charged with two separate counts of robbery alleged to have occurred on August 17 and September 9, 2001, respectively. (<u>Id.</u> ¶ 36).  After spending two more months in jail with no grand jury presentation as to any of the cases, plaintiff was finally released.  (<u>Id.</u> ¶ 37).

On January 16, 2002, the first case that plaintiff was arrested for was dismissed.  (<u>Id.</u> ¶ 38).  On January 29, 2002, the second case that plaintiff was arrested for was dismissed. (<u>Id.</u> ¶ 39).

## 2.  <u>Facts Derived from the Evidence</u>

### a.  <u>Officer Strong's Chase</u>

On the morning of September 25, 2001, Strong was on patrol in the vicinity of 500 West 178th Street, when he observed a woman screaming in the doorway of a nearby building.  (Def. Rule 56.1 ¶¶ 2-3).[1]  When asked by Strong what had happened, the

---

[1]    I construe the facts in the light most favorable to plaintiff.  Where an opposing party, however, "fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  <u>See</u> Local Rule 56.1(c); <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003).  The affirmation offered by plaintiff does not

woman responded by saying that she had just been robbed, and directed Strong to the back entrance of the building.  (Id. ¶ 4).

There, Strong saw a person running through the alley, and he began chasing the individual between buildings, through back alleys, over a wall, and up a fire escape to the roof of a building.  (Id. ¶ 5; Scharfstein Decl. Ex. D at 46, 60-63).[2]  He lost sight of the person as he climbed the roof of the building.  (Def. Rule 56.1 ¶ 7).  Upon reaching the rooftop, Strong saw a rooftop door closing.  (Id. ¶ 8).  Strong never saw the person's face.  (Id. ¶ 6).

Strong proceeded to enter the building, where he then heard a door from the fifth floor slam.  (Id. ¶ 9).  As he reached the fifth floor, he heard the sound of locks click on the door of Apartment #5C.  (Id. ¶ 10).

---

controvert all the facts in defendants' Rule 56.1 statement. Where facts are not controverted, they are deemed admitted.

[2]      Plaintiff's counsel asserts that Strong lost the robber, and thus did not chase after him.  (Dwyer Affirmation ¶ 12).  She further claims that Strong remained with the female victim throughout the entire time until she was brought to the precinct.  (Id. ¶ 13).  These are merely counsel's assertions, however, and they are not supported by evidence.  The law is clear that an attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment.  See Wyler v. United States, 725 F.2d 156, 160 (2d Cir. 1983).  Thus, I only construe facts in favor of plaintiff where the attorney affirmation is supported by exhibits containing evidence that would be admissible at trial.  See, e.g., John Hancock Prop. and Cas. Ins. Co. v. Universale Reinsurance Co., Ltd., 147 F.R.D. 40, 45 (S.D.N.Y. 1993) (citing Golotrade Shipping & Chartering, Inc. v. Travelers Indem. Co., 706 F. Supp. 214, 217 n.3 (S.D.N.Y. 1989)).

Strong later learned that the address of the apartment building was 511 West 177th Street.  (<u>Id.</u> ¶ 11).  Thereafter, he was directed by a supervisor to the street.  (<u>Id.</u> ¶ 12).

### b.  <u>The Arrest</u>

Sometime after the robbery and during the chase, three police officers knocked on the door of Apartment #5C at 511 West 177th Street.  (Dwyer Affirmation Ex. K at 105, 110).  Plaintiff opened the door, and was asked to step across the threshold. (<u>Id.</u> at 111).  Before he could comply, one of the officers grabbed him and threw him against the wall.  (<u>Id.</u>).  Plaintiff was then apprehended, and led outside the building.  (Def. Rule 56.1 ¶¶ 16, 19).  Neither Officer Strong nor Officer Blain participated in plaintiff's arrest.  (<u>Id.</u> ¶¶ 25-26).

During this time, members of the NYPD Emergency Services Unit (ESU) also responded to a call, and canvassed the area in search of the robber.  (<u>Id.</u> ¶ 14).  While searching the area, civilians directed them to 511 West 177th Street, Apartment #5C.  (<u>Id.</u>).  Upon arriving at the apartment, however, the ESU officers found the apartment door already open.  (Dwyer Affirmation Ex. N).  They entered the apartment, but made no arrest, as plaintiff was already in police custody.  (<u>Id.</u>).[3]

---

[3]     Defendants assert that the ESU officers knocked on the apartment door and arrested plaintiff (Def. Rule 56.1 ¶¶ 14-18), but the ESU report states that the apartment door was already open, and also makes no mention of an arrest (Dwyer Affirmation Ex. N).

Sometime after the robbery, the female robbery victim
was escorted by police officers to the precinct in a marked
police car. (Dwyer Affirmation Ex. E).  Before heading to the
precinct, the officers asked the woman to view a suspect that had
been detained on the corner of West 177th Street and Audubon
Avenue. (Id.).  The suspect was plaintiff Joseph Little. (Def.
Rule 56.1 ¶ 13).  When asked by the officers whether plaintiff
was the person who robbed her, the woman responded "no." (Dwyer
Ex. B at 4, Ex. E).[4]

Although the female victim of the robbery did not
identify plaintiff as the perpetrator (id.), a male victim from a
different robbery -- one that took place on August 17, 2001 --
arrived onto the scene, and identified plaintiff as the
individual who previously robbed him on August 17th (Def. Rule
56.1 ¶¶ 20-21).

Plaintiff was processed on charges arising from the
September 25, 2001 robbery of the female victim (id. ¶ 27), even
though she had not identified him as the perpetrator (Dwyer
Affirmation Ex. B at 4, Ex. E).  Officer Strong prepared the
arrest paperwork for plaintiff. (Def. Rule 56.1 ¶ 24).

At the precinct, the female victim was asked to
identify the robber through a line-up of men in head coverings
and masks. (Id. ¶ 31).  Plaintiff was in the line-up (id. ¶ 30),

_____

[4]      Again, defendants' version of the facts differ.
Defendants assert that the woman identified plaintiff as the
robber and submit the police complaint report and complaint
report worksheet to support their assertion. (Def. Rule 56.1 ¶
19; Scharfstein Decl. Ex. K).

-12-

but she did not identify anyone as the robber (Dwyer Affirmation
Ex. E).

### c.   **Plaintiff's Criminal Prosecution**

Assistant District Attorney Amy Schwartz of the
Manhattan District Attorney's Office received information
concerning plaintiff's arrest on or before September 26, 2001
while she was in the complaint room.  (Def. Rule 56.1 ¶ 55;
Scharfstein Decl. Ex. D at 13).  After receiving the original
complaint, ADA Schwartz was also informed about the underlying
facts of the robbery by Officer Strong.  (Def. Rule 56.1 ¶ 54;
Scharfstein Decl. Ex. D at 84 & Ex. M).[5]  According to Strong,
ADA Schwartz "asked me what happened, I told her what happened
and I told her what my complainant had told me and what had
happened."  (Scharfstein Decl. Ex. D at 84).[6]  Based on the
information she received, ADA Schwartz decided to prosecute
plaintiff.  (Def. Rule 56.1 ¶ 59).

On September 26, 2001, plaintiff was arraigned, and a
state court judge set bail at $75,000.  (Id. ¶ 60).  Plaintiff
remained in custody, and on October 10, 2001, he was re-arrested

---

[5]      According to ADA Schwartz, she was informed that the
female victim had identified plaintiff as the perpetrator of the
September 25, 2001 robbery.  (Scharfstein Decl. Ex. C at 19, 22,
25-27).  She could not recall, however, the specific officer that
informed her of the identification.  (Id. at 22-23).

[6]      Because the parties submitted incomplete transcripts of
Strong's deposition, it is unclear what the substance of his
actual conversation with ADA Schwartz entailed, or whether Strong
testified at all to what he said to ADA Schwartz.  (Scharfstein
Decl. Ex. D; Dwyer Affirmation Ex. A).

by Officer Blain for two robberies that had taken place on August 17, and September 9, 2001, respectively.  (Id. ¶¶ 62-64).  The October 10, 2001 arrest was made pursuant to an arrest warrant, which was obtained by ADA Schwartz based on identifications of plaintiff by complaining witnesses.  (Id. ¶¶ 65-66).  With this information, ADA Schwartz decided to bring additional criminal charges against plaintiff.  (Id. ¶¶ 68, 71).  At the arraignment for these charges, a state court judge set bail for $75,000.  (Id. ¶ 72).

Among the evidence in the District Attorney's possession was a fingerprint from a bicycle used in connection with a robbery that took place on August 10, 2001.  (Id. ¶ 74).  On October 11, 2001, ADA Schwartz requested a comparison of the fingerprint lift from the bicycle with plaintiff's fingerprints.  (Id. ¶ 75).  Sometime on or after October 21, 2001, ADA Schwartz received notice that the fingerprint lift from the bicycle did not match plaintiff's fingerprints.  (Id. ¶ 77).

On October 23, 2001, Mary Shaw, plaintiff's girlfriend, came forward with new information implicating two suspects other than plaintiff as the perpetrators of the robberies.  (Id. ¶¶ 78-80).  One of the suspects was Hashiem Henry, who plaintiff and his girlfriend knew because he lived near plaintiff's residence.  (Id. ¶¶ 79, 81-82).

On or about November 1, 2001, a comparison of Henry's fingerprints with the lift from the bicycle turned out to be a match.  (Id. ¶¶ 87-89, 93).  Henry was arrested on November 12,

-14-

2001.  (Id. ¶ 94).  Henry eventually pled guilty to four
robberies, none of which were the crimes plaintiff was originally
arrested and charged for.  (Id. ¶¶ 98-100).

Plaintiff remained in custody for the first set of
criminal charges until October 26, 2001, and for the second set
of criminal charges until November 2, 2001.  (Id. ¶ 84).  The
first set of charges against plaintiff was dismissed on January
16, 2002, while the second set of charges was dismissed on
January 29, 2002.  (Id. ¶¶ 85-86).

## DISCUSSION

First, I address plaintiff's Rule 56(f) application,
and find that additional discovery is unwarranted.  Second, in
light of my denial of plaintiff's request, I proceed to address
the merits of defendants' motion for summary judgment.

## A.   Rule 56(f) Application for Additional Discovery

### 1.   Rule 56(f) Standard

Rule 56(f) of the Federal Rules of Civil Procedure
provides that a court may deny a motion for summary judgment and
allow for additional discovery where necessary to gather
additional facts "essential to justify the party's opposition" to
the motion.  Fed. R. Civ. P. 56(f); Hudson River Sloop
Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 422 (2d Cir.
1989).

Rule 56(f) "applies to summary judgment motions made
before discovery is concluded."  Johnson v. Goord, No. 04 Civ.

-15-

5919 (RJH), 2007 WL 943272, at *24  (S.D.N.Y. March 28, 2007)
(quoting McAllister v. New York City Police Dep't, 49 F. Supp. 2d
688, 696 n.5 (S.D.N.Y. 1999)).  Moreover, "a dilatory plaintiff
cannot rely on Rule 56(f)."  Burlington Coat Factory Warehouse
Corp. v. Esprit de Corp., 597 F. Supp. 1199, 1202-03 (2d Cir.
1984) (denying plaintiff's Rule 56(f) application to extend
discovery where plaintiff had not been diligent about proceeding
with discovery, substantial discovery had already been conducted,
and the facts elicited by discovery did not support plaintiff's
claims) (affirmed in part, reversed in part on other grounds).

        Thus, where plaintiff has had a reasonable opportunity
to conduct discovery, a Rule 56(f) application will usually be
denied.  See Amaker v. Haponik, No. 98 Civ. 2663 (JGK), 2002 WL
523385, at *7 (S.D.N.Y. March 29, 2002) (denying 56(f)
application because "the plaintiff has been given ample time for
discovery, and discovery is now complete"); Istituto Per Lo
Sviluppo Economico Dell' Italia Meridionale v. Sperti Prods.,
Inc., 47 F.R.D. 310, 317 (S.D.N.Y. 1969) (denying application to
extend discovery because party was given ample time and
opportunity to investigate the matters but did not take advantage
of opportunities open to it to obtain discovery); 10B Charles
Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
and Procedure, § 2741 (3d ed. 1998) (Rule 56(f) "will not be
applied to aid a party who has been lazy or dilatory.  Thus . . .
a request for relief under Rule 56(f) is extremely unlikely to

succeed when the party seeking the delay has failed to take advantage of discovery.").

    2.   **Application**

        Plaintiff's Rule 56(f) application is denied for the following reasons.  First, the application is rejected on procedural grounds as Rule 56(f) applications are for summary judgment motions made <u>before</u> discovery has concluded.  <u>See</u> <u>Johnson</u>, 2007 WL 943272, at *24; <u>McAllister</u>, 49 F. Supp. 2d at 696 n.5.  Here, defendants' summary judgment motion was filed after the discovery cut-off.

        Second, plaintiff has been dilatory in his discovery obligations, and thus he cannot rely on a 56(f) application to bail him out.  Specifically, I granted -- at a minimum -- three extensions of the discovery cut-off.  As a result, plaintiff had nearly two years after the filing of the complaint to conduct discovery.  In many instances, the time was not well spent.  For example, plaintiff did not notice the depositions of three officers until August 3 and 9, 2006 -- just a few days prior to the discovery cut-off.  Plaintiff asserts that this is because the deposition of ADA Amy Schwartz did not take place until August 1, 2006, and the officers were not identified until that time.  This does not, however, excuse the fact that plaintiff had plenty of time and opportunity to arrange for an earlier deposition of ADA Schwartz, either by subpoena or other means.

        Nor can plaintiff assert that he was stonewalled or prevented from conducting discovery.  Indeed, when plaintiff's

counsel argued that the Manhattan District Attorney's Office was not providing the materials ordered in a subpoena, I issued an order stating that she could move to compel the District Attorney's Office to comply with the subpoena.  Furthermore, at the August 11, 2006 conference, I directed defendants to obtain some of the requested materials from the District Attorney's Office -- which they did for the most part.  On October 12, 2006, the District Attorney's Office forwarded 662 pages of documents to defendants; approximately 180 of those pages related to the crimes for which plaintiff was arrested and charged.  The District Attorney's Office asserted that the other documents were privileged, and plaintiff did not challenge the Office's position on that issue.  (Def. Reply at 6 n.5).

        In sum, plaintiff's 56(f) application for an extension of discovery is denied.  He had a full and fair opportunity to obtain any materials that might have been necessary to his case.

**B.**   **Defendants' Motion for Summary Judgment**

        Plaintiff does not make clear what his § 1983 claims are in his complaint.  Indeed, plaintiff asserts only two causes of action: (1) violation of constitutional rights as to Officers Strong, Blain and other unnamed officers (Compl. ¶¶ 50-54); and (2) violation of constitutional rights -- generally (id. ¶¶ 55-62).  The allegations within those paragraphs are not clear either.  Nevertheless, I construe the pleadings liberally, and interpret the complaint to include the following claims against

-18-

Officers Strong and Blain:[7] (1) false arrest and false imprisonment (Compl. ¶¶ 40, 51); (2) malicious prosecution (see Dwyer Affirmation ¶ 122); (3) conspiracy (Compl. ¶ 43); and (4) violations of due process and equal protection under the Fourteenth Amendment (id. ¶ 51).[8]

First, I discuss the standard for a summary judgment motion. Second, I address plaintiff's claims.

1. **Summary Judgment Standard**

The standards governing motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. See Fed R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). To create an issue for trial, there must be sufficient evidence in the record to support a jury verdict in the nonmoving party's favor. See id.

---

[7]    I do not include possible claims that are asserted only against the City, as the parties agreed to dismiss the City from this action.

[8]    There is arguably a claim for excessive force (Compl. ¶¶ 20-21), but only against the City of New York or the officers who effectuated plaintiff's first arrest as neither Officers Strong nor Blain were involved in the arrest (Def. Rule 56.1 ¶¶ 25-26). Because the City was dismissed, this claim is dismissed as well.

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. Nat'l Union Fire Ins. Co. v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989) (quoting R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted)).  Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

   2.   **False Arrest and False Imprisonment**

      a.   **Applicable Law**

To the extent that a plaintiff alleges false arrest and false imprisonment, they are considered synonymous causes of action.  See Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." Covington v. City of New York, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J., dissenting).

-20-

The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York law.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  To state a claim for false arrest under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified.  See Posr, 944 F.2d at 97.

Probable cause to arrest is a complete defense to an action for false arrest, even where a person is ultimately acquitted, because it constitutes justification.  See Weyant, 101 F.3d at 852 (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); see also Montalvo v. New York City Police Officer Jennings, No. 93 Civ. 8351 (KMW), 1996 WL 148483, at *2 (S.D.N.Y. Apr. 1, 1996).  "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).  The Second Circuit has held that a determination of whether probable cause to arrest existed may be made "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."  Weyant, 101 F.3d at 852 (citations omitted).

A police officer can only be held liable for a false arrest that occurs outside his presence if he "had reason to know" that such a false arrest was likely to occur.  Id. at 748 n.4 (citing Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

### b.   Application

#### i.   Officer Strong

According to plaintiff, Officer Strong is liable for false arrest because he was the one responsible for preparing the arrest report for the September 25, 2001 robbery, and for taking plaintiff through the preliminary stages of arrest processing. (Dwyer Affirmation ¶ 80).

First, plaintiff has not produced any evidence to show that Strong was personally involved in plaintiff's arrest.  As mentioned before, an attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment.  See Wyler, 725 F.2d at 160.

Second, Strong was not actually present when the arrest occurred.  (Def. Rule 56.1 ¶¶ 25-26).  Indeed, he was not at plaintiff's apartment when the arrest occurred, and he played no role in effectuating the arrest.  His role was limited to processing the arrest paperwork, which was based on information relayed to him by other officers.  (Id. ¶¶ 23-24).

When an officer is outside the presence of the false arrest, he will only be held liable if he "had reason to know" that such a false arrest was likely to occur.  Escalera, 361 F.3d

-22-

at 748 n.4.  Here, under the set of facts proffered by plaintiff, Strong did not see plaintiff until after plaintiff had already been detained.  Based on these facts, no reasonable juror could conclude that Strong had reason to know that a false arrest was likely to occur.  Summary judgment on the false arrest claim is therefore granted for Officer Strong.

### ii.  **Officer Blain**

On October 10, 2001, Officer Blain re-arrested plaintiff for two more robberies -- one that occurred on August 17, 2001 and another one that occurred on September 9, 2001.  Plaintiff asserts that Officer Blain's decision to arrest him for these robberies "was so flawed that no reasonable officer could have made a similar choice."  (Dwyer Affirmation ¶ 141).

First, as an initial matter, plaintiff's re-arrest by Officer Blain was actually made pursuant to a warrant obtained by ADA Schwartz.  (Def. Rule 56.1 ¶ 66).  Where an individual's arrest is effectuated pursuant to a warrant, there can be no claim for false arrest or unlawful imprisonment.  See Jones v. Trump, 971 F. Supp. 783, 788-89 (S.D.N.Y. 1997) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118-19 (2d Cir. 1995); see also Coakley v. Jaffe, 72 F. Supp. 2d 362, 363-64 (S.D.N.Y. 1999).  Rather, the plaintiff must rely on malicious prosecution.  Jones, 971 F. Supp. at 788-89.  Here, plaintiff's false arrest claim against Blain cannot survive because plaintiff's arrest was effectuated pursuant to a warrant.

Second, even assuming that plaintiff had a viable false arrest claim, no reasonable juror could conclude that Blain was liable, as the facts demonstrate that he had probable cause.  In the context of a false arrest claim, probable cause is a complete defense.  See Weyant, 101 F.3d at 852.

Here, Blain re-arrested plaintiff based on identifications by complaining witnesses.  (Def. Rule 56.1 ¶ 65; Scharfstein Decl. Ex. P).  It is well-settled that police officers have probable cause to arrest if they receive information from a complaining victim or other witness who they reasonably believe to be telling the truth.  See, e.g., Singer, 63 F.3d at 119 (arresting officer may rely on information from a victim to effect an arrest absent circumstances raising doubts as to victim's veracity); Daniels v. City of New York, No. 03 Civ. 809 (GEL), 2003 WL 22510379, at *3 (S.D.N.Y. Nov. 5, 2003) ("Information furnished by a single complainant can establish probable cause when the information comes from a victim who provides specific details of a crime."); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth.").

The complainants in this instance were the actual victims, they identified plaintiff, and they provided details of the robberies.  (Scharfstein Decl. Ex. P).  On the record before

the Court, Blain had no reason to doubt their veracity.  Under
these circumstances, Blain had probable cause to arrest
plaintiff.

Notwithstanding these facts, plaintiff nevertheless
argues that no reasonable officer could have believed that he or
she had probable cause because the complainants stated that the
perpetrators "spoke in broken Spanish," and plaintiff did not
speak in broken Spanish.  (Dwyer Affirmation ¶ 144).  This
argument is rejected.  An officer "is not required to explore and
eliminate every theoretically plausible claim of innocence before
making an arrest."  Ricciuti v. N.Y.C. Transit Auth., 124 F.3d
123, 128 (2d Cir. 1997).  The victims of both robberies
identified plaintiff as the robber; this was sufficient for
probable cause.  In the circumstances here, the fact that
plaintiff does not speak in broken Spanish is not enough to
negate the existence of probable cause.

Accordingly, summary judgment on the false arrest claim
is granted for Officer Blain.

### 3.   **Malicious Prosecution**

Although plaintiff's complaint does not appear to
assert a malicious prosecution claim, plaintiff's counsel's
affirmation suggests that such a claim was asserted.  (Dwyer
Affirmation ¶ 122).  I therefore construe the complaint to
include a malicious prosecution claim under § 1983.

a.  **Applicable Law**

To prevail on a § 1983 malicious prosecution claim, a
plaintiff must establish the elements of malicious prosecution
under state law, and then show that his Fourth Amendment rights
were violated after legal proceedings were initiated.  See Fulton
v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) (citations
omitted).

To state a claim for malicious prosecution under New
York law, a plaintiff must prove: "(1) the initiation or
continuation of a criminal proceeding against plaintiff; (2)
termination of the proceeding in plaintiff's favor; (3) lack of
probable cause for commencing the proceeding; and (4) actual
malice as a motivation for defendant's actions."  Murphy v. Lynn,
118 F.3d 938, 947 (2d Cir. 1997) (citation omitted).

For the constitutional element, plaintiff must show a
seizure or other "perversion of proper legal procedures"
implicating the plaintiff's personal liberty and privacy
interests under the Fourth Amendment.  Washington v. County of
Rockland, 373 F.3d 310, 316 (2d Cir. 2004).

As with a false arrest claim, the existence of probable
cause is a complete defense to a claim of malicious
prosecution.  See Savino v. City of New York, 331 F.3d 63, 72 (2d
Cir. 2003).

Moreover, "[o]nce a criminal defendant has been
formally charged, the chain of causation between the officer's
conduct and the claim of malicious prosecution is broken by the

-26-

intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." Williams v. City of New York, No. 02 Civ. 3693 (CBM), 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003) (citing Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)).  Thus, an officer will not be held liable for malicious prosecution unless there is evidence that he misled the prosecuting attorney.  Id.

### b.  Application

The evidence here shows that after receiving information regarding the robberies, ADA Schwartz made an independent assessment and decided to move forward with the prosecution of the plaintiff.  (Def. Rule 56.1 ¶¶ 55, 59, 68; Scharfstein Decl. Ex. C).  Thus, ADA Schwartz broke the chain of causation, and Officers Strong and Blain will not be held liable for malicious prosecution unless there is evidence that either of them misled the prosecutor.  Williams, 2003 WL 22434151, at *6.

### i.  Officer Strong

Based on the evidence, no reasonable juror could conclude that Officer Strong misled ADA Schwartz.  While evidence exists that Strong informed ADA Schwartz about the September 25, 2001 robbery (Scharfstein Decl. Ex. D at 84), plaintiff has presented no evidence from which a reasonable juror could conclude that Strong did anything more than report to ADA Schwartz the information that was relayed to him.

For example, there is a police complaint report where Rodriguez -- the female victim -- apparently stated that the

"ABOVE PERP [Joseph Little] DID FORCIBLY REMOVE PROPERTY FROM C/W AND CAUSE HER PHYSICAL INJURY TO HER PERSON." (Scharfstein Decl. Ex. K). This statement, which indicates that she identified plaintiff as the perpetrator, is at odds with the handwritten statement she later submitted to plaintiff's counsel. (Dwyer Affirmation Ex. E). Hence, there is an issue of fact as to whether some officer incorrectly stated that she had identified plaintiff as the perpetrator. There is, however, no evidence to suggest that the officer was Strong. As plaintiff concedes, "[n]o witness has been able to state the identity of the police officer to whom the female complaining witness allegedly indicated a positive identification of plaintiff as the perpetrator of the early morning robbery at 500 West 178th Street on September 25, 2001." (Dwyer Affirmation ¶ 50).

Indeed, even the police report suggests that Strong was not at the scene. According to the report, the officers at the scene were "SGT ROSADO, DT MCNAMARA, CO OF 33 PCT DET SQD PO DANNY ACOSTA." (Scharfstein Decl. Ex. K). Thus, while Strong's name was printed on the complaint report, nothing in the report suggests that he had personal knowledge of whether the female victim identified plaintiff as the perpetrator. It is, of course, theoretically possible that Strong fabricated the identification out of whole cloth and misled ADA Schwartz about this; but nothing in the record suggests this, and a reasonable juror looking at the record could not so conclude.

Accordingly, Officer Strong's motion for summary judgment on the malicious prosecution claim is granted.

### ii.  **Officer Blain**

Summary judgment is also granted for Officer Blain because there is no evidence that he misled ADA Schwartz.  The evidence as to Officer Blain shows that he received identifications from the victims of the two separate robberies, and provided this information to ADA Schwartz.  (Def. Rule 56.1 ¶¶ 65-68; Scharfstein Decl. Ex. P).  Plaintiff has not presented evidence from which a jury could find that Blain's reliance on these identifications was unreasonable.  To be sure, these identifications also provided probable cause for plaintiff's detention, which is also a complete defense for a malicious prosecution claim.  See Savino, 331 F.3d at 72.  Summary judgment is therefore granted for Officer Blain on this claim.

### 4.  **Conspiracy Under §§ 1983 and 1985**

#### a.  **Applicable Law**

To successfully assert a § 1983 claim for conspiracy, plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing harm to plaintiff.  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

To state a claim for conspiracy pursuant to 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) the purpose of which was to deprive a person or class of persons of equal protection of the laws or of equal privileges or immunities under the law; (3) actions by the defendants in furtherance of the conspiracy; (4) injury to plaintiff's person or property or deprivation of a right as a result of these actions; and (5) class-based discriminatory animus. <u>Shabazz v. Vacco</u>, No. 97 Civ. 3761, 1998 WL 901737, at *3 (S.D.N.Y. Dec. 28, 1998).

Complaints that "contain[] only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 325 (2d Cir. 2002) (quoting <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993)).

"Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together." <u>Salgado v. City of New York</u>, No. 00 Civ. 3667 (RWS), 2001 WL 290051, at *8-9 (S.D.N.Y. March 26, 2001) (citing <u>Hermann v. Moore</u>, 576 F.2d 453, 459 (2d Cir. 1978); <u>Girard v. 94th St. and Fifth Ave. Corp.</u>, 530 F.2d 66, 71-72 (2d Cir. 1976)). An exception to the intracorporate conspiracy doctrine exists where the individuals are "motivated

by an independent personal stake in achieving the corporation's
objective." <u>Salgado</u>, 2001 WL 290051, at *8.

       **b.**    **Application**

       Plaintiff's allegations of conspiracy as to both
Officers Strong and Blain are dismissed under the intracorporate
conspiracy doctrine.  Plaintiff alleges that police officers
conspired with each other to violate his rights (Compl. ¶ 43),
but all the police officers -- including Officers Strong and
Blain -- are part of a single corporate entity, the City of New
York.  <u>Id.</u> at *8-9.  Moreover, plaintiff does not provide any
evidence to suggest that either of the officers were motivated by
an independent personal stake in his arrest and prosecution.
Accordingly, summary judgment on the conspiracy claim is granted
for both Officers Strong and Blain.

     **5.**    **Procedural Due Process**

       **a.**    **Applicable Law**

       To sustain a § 1983 claim based on an alleged violation
of due process, a plaintiff must show that (1) he possesses a
liberty or property interest protected by the Constitution or
federal statutes and (2) he was deprived of that liberty or
property interest without due process.  <u>Ciambriello</u>, 292 F.3d at
313 (citing <u>Green v. Bauvi</u>, 46 F.3d 189, 194 (2d Cir. 1995)).

       **b.**    **Application**

       Here, plaintiff essentially alleges that his due
process rights were violated because of the unlawful arrests.

(Compl. ¶ 51).[9]  There is little dispute that his liberty interest is implicated by the fact that he was mistakenly confined.  The question as to Officers Strong and Blain is whether they deprived plaintiff of his liberty interest without due process.

### i.   **Officer Strong**

Based on the evidence, no reasonable juror could conclude that Officer Strong deprived plaintiff of his liberty interest without due process.  For example, Strong was not present during the arrest, nor is there evidence to suggest that he did not abide by customary police procedures in terms of processing plaintiff's arrest paperwork.  Thus, summary judgment on plaintiff's procedural due process claim is granted.

### ii.   **Officer Blain**

Likewise, summary judgment is granted for Officer Blain on this claim.  The evidence shows that Officer Blain received identifications from the victims of the robberies, and thus had probable cause for the arrest.  (Def. Rule 56.1 ¶ 65; Scharfstein Decl. Ex. P).  Moreover, plaintiff was arrested pursuant to a warrant obtained by ADA Schwartz.  Of course, once exculpatory information arose implicating another individual for the robberies, the charges against plaintiff were dropped.

---

[9]     To the extent plaintiff asserts a due process violation for the line-ups in which he was forced to participate, I have already discussed above that the only remedy for prejudicial line-ups is suppression of evidence at trial, not a § 1983 claim. See McGaw, 1993 WL 148959, at *2-3; Haupt, 794 F. Supp. at 1489.

Accordingly, based on the evidence, no reasonable juror could conclude that Blain deprived plaintiff of his liberty without due process because: (1) Blain had probable cause for the arrest; (2) ADA Schwartz obtained a warrant for his arrest; and (3) plaintiff was released once information implicating another individual arose.  Summary judgment is therefore granted to Officer Blain on plaintiff's procedural due process claim.

### 6.  Substantive Due Process

#### a.  Applicable Law

The Fourteenth Amendment protects not only against procedural unfairness, but also against "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense." Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (citations omitted).  It does not, however, protect against government action that is merely "incorrect or ill-advised." Id. (citing Bishop v. Wood, 426 U.S. 341, 350 (1976)).

To show a violation of substantive due process, plaintiff must: (1) identify the constitutional right at stake, and (2) demonstrate that the government action was conscience-shocking or arbitrary in the constitutional sense.  Id. Government actions that have risen to the level of conscious-shocking behavior typically meet a high bar.  See, e.g., Riggins v. Nevada, 504 U.S. 127, 135 (1992) (forced administration of antipsychotic drugs absent overriding justification and determination of medical appropriateness); Rochin v. California, 342 U.S. 165, 172 (1952) (forcibly pumping a suspect's stomach);

-33-

Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 252 (2d Cir. 2001) (gym teacher choking, punching in face, and ramming student's head into bleachers and against metal fuse box).

       **b.**   **Application**

Again, plaintiff's assertion of a substantive due process violation derives from the mistaken arrests. There is no dispute that his liberty interest was at stake. Thus, the only issue is whether the behavior of Strong and Blain amounted to conscious-shocking behavior. Here, a reasonable juror could not conclude from the evidence that either Strong or Blain committed conscious-shocking behavior. Indeed, there is no evidence that Strong was involved in any egregious behavior, as he was not involved in effectuating the arrest. As for Blain, the evidence shows that he had probable cause for the arrest, and ADA Schwartz obtained a warrant based on that information for the arrest. Accordingly, summary judgment on the substantive due process claim is granted as to both Officers Strong and Blain.

    **7.**  **Equal Protection**

       **a.**  **Applicable Law**

"To state a claim for an equal protection violation, [plaintiff] must allege that a government actor intentionally discriminated against [him] on the basis of race, national origin[,] or gender." Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999).

Where it is alleged that police officers investigate solely based upon race, without more, then plaintiff will have stated an actionable claim under the Equal Protection Clause. See Brown v. City of Oneonta, 221 F.3d 329, 337-38 (2d Cir. 2000).

### b. Application

Here, plaintiff alleges that his equal protection rights were violated because he was treated differently based on his race. (Compl. ¶¶ 19, 23). Specifically, he asserts that plaintiff was the only African-American man who lived in his building (id. ¶ 19), and that during the arrest -- in response to plaintiff's inquiry of what was going on -- the police said "[s]hut the hell up you black bastard, we got you know [sic]" (Dwyer Affirmation Ex. K at 111).

Based on the evidence, however, no reasonable juror could conclude that either Strong or Blain discriminated against plaintiff because of race. Indeed, neither Strong nor Blain participated in effectuating that first arrest when plaintiff alleges the racist insult occurred. Plaintiff has presented no evidence to show that either Strong or Blain committed these acts.

Accordingly, summary judgment on plaintiff's equal protection claims are granted as to both Officers Strong and Blain.

## CONCLUSION

To be clear, the allegations in plaintiff's complaint are serious.  Plaintiff, however, has simply not submitted any evidence in support of those claims.  Plaintiff's Rule 56(f) application to extend discovery is denied, and defendants' motion for summary judgment is granted.  The Clerk of the Court shall enter judgment dismissing the complaint with prejudice, with costs but without fees, and close this case.

SO ORDERED.

Dated:     New York, New York
           May 15, 2007

                                        DENNY CHIN
                                        United States District Judge

-36-